IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA



FILED

MAR 1 8 2021

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____KH_____,DEPUTY

JAMES PATRICK LESLEY, JR., )
        Plaintiff, )
         )
VS. )   Case No. CIV-21-231-G
         )
DAVID PRATER, DISTRICT ATTORNEY )
OF OKLAHOMA COUNTY, )
        Defendant. )

## PETITION PURSUANT TO U.S.C. § 1983

**COMES NOW**, Plaintiff, James Patrick Lesley, Jr., an inmate at Davis Correctional Facility, 6888 East 133rd Road, Holdenville, OK 74848-9295, appearing Pro se, alleges to the Court, the Defendant, David Prater, District Attorney of Oklahoma County, 320 Robert S. Kerr 5th floor, Oklahoma City, OK 73102, acting in his individual and official capacity, committed Libel. In support of his petition the Plaintiff respectfully shows the Court the following.

## SUMMARY OF FACTS

¶1 The State of Oklahoma in case number CF-99-6416, charged the Plaintiff with murder in the first degree with malice and aforethought pursuant to 21 O.S. § 701.7(A), or in the alternative felony murder in the first degree pursuant to 21 O.S. § 701.7(B), for the November 15, 1999 murder of Danielle Scott, who at the time of her death was 8 ½ months pregnant.

¶2 21 O.S. § 701.7(A) defines malice as "that deliberate intention unlawfully to take away the life of a human being..." 21 O.S. § 701.7(B) states in part "A person also commits the crime of murder in the first degree regardless of malice, when that person or any other person takes the life of a human being during...first degree burglary..."

¶3 In November, 2002 a jury in the District Court of Oklahoma County found, the Plaintiff did not have a "deliberate intention unlawfully to take away the life of" Danielle Scott, as the Plaintiff was acquitted of murder in the first degree with malice and aforethought pursuant to 21

1

O.S. § 701.7(A).

¶4 Jurors found although there was no malice on the part of the Plaintiff, and he did not take away the life of Danielle Scott, her life was taken during a first degree burglary, as jurors convicted the Plaintiff of the alternative charge, felony murder in the first degree pursuant to 21 O.S. § 701.7(B).

¶5 Because the State was seeking the death penalty, jurors had the option to sentence the Plaintiff to death, life without the possibility of parole, or life with the possibility of parole. Jurors chose to sentence the Plaintiff to the minimum sentence allowed by law life with the possibility of parole.

¶6 On November 25, 2020, staff of the pardon and parole board Dedric Johnson, completed an "Investigative Report" (exhibit A), upon which the pardon and parole board based their decision at the first stage of consideration of the Plaintiff for recommendation to the Governor for parole.

¶7 The Board denied the Plaintiff recommendation to the Governor for parole at the first stage conducted during the January, 2021 parole board meeting.

¶8 Included in the "Investigative Report" was a "District Attorney's Version" (exhibit A, pg2), written by the Defendant.

**BRIEF IN SUPPORT**

¶9 The Defendant committed Libel when he made false, defamatory, malicious, and unprivileged claims regarding the Plaintiff in his "District Attorney's Version".

¶10 The Defendant claimed the Plaintiff "ordered Blonner to 'do the bitch'. Blonner acting at the direction of Lesley cut Danielle's throat." (exhibit A, pg2).

¶11 That claim implies the Plaintiff had a "deliberate intention unlawfully to take away the life of" Danielle Scott, murder in the first degree with malice and aforethought pursuant to 21 O.S. § 701.7(A).

¶12 In fact, the State presented that exact claim to jurors at the trial of the Plaintiff in an attempt

to convict the Plaintiff of murder in the first degree with malice and aforethought pursuant to 21 O.S. § 701.7(A).

¶13 After listening to all of the witness testimony, and examining all of the evidence presented at trial, jurors rejected that claim by finding the Plaintiff did not have a "deliberate intention unlawfully to take away the life of" Danielle Scott, as jurors acquitted the Plaintiff of murder in the first degree with malice and aforethought pursuant to 21 O.S. § 701.7(A).

¶14 Therefore, the Defendant's claim the Plaintiff "ordered Blonner to 'do the bitch'.", and that Blonner was acting at the direction of the Plaintiff when he cut Danielle Scott's throat are libelous per se, as the Defendant claims the Plaintiff committed crimes for which the Plaintiff had been acquitted by a jury in the District Court of Oklahoma County, State of Oklahoma case number CF-99-6416.

¶15 The Defendant's conduct was intentional, and showed "actual malice", because he had a high degree of awareness that his claims were false. He made the false claims for the sole purpose of persuading the pardon and parole board to deny the recommendation of the Plaintiff to the Governor for parole, which the Board did. That too was malicious, as it was contrary to the expresses intentions of jurors who explicitly told trial officials they gave the Plaintiff "a life sentence because they believed that he should be given the opportunity to make parole." (exhibit B).

¶16 The "Investigative Report", in which the "District Attorney's Version" was included, was completed pursuant to 57 O.S. § 332.7(L), which require the pardon and parole board "to make inquiry into the conduct and the record of the" Plaintiff "during his custody in the Department of Corrections". All claims made in the "District Attorney's Version" pertain to alleged conduct of the Plaintiff prior to "his custody in the Department of Corrections", and therefore unprivileged, as they are not relevant, nor did they make any reference to the "conduct and the record of the"

3

Plaintiff "during his custody in the Department of Corrections", as the inquiry set forth in 57 O.S. § 332.7(L) mandate.

¶17 Parole considerations are conducted pursuant to 57 O.S. § 332.7. Under 57 O.S. § 332.7, the Defendant has no official duty to submit a written affidavit regarding the recommendation of the Plaintiff to the Governor for parole. In fact State statutes do not provide the Defendant with any official duty what-so-ever in the parole process.

¶18 Due to the fact the State's prosecution against the Plaintiff concluded January 3, 2003 (exhibit C), and the fact State statutes do not provide the Defendant with any official duty what-so-ever in the prole process, the Defendant's submission of a written affidavit regarding the recommendation of the Plaintiff to the Governor for parole was not performed in his role as an advocate for the State and therefore not protected by prosecutorial immunity.

¶19 The Tenth Circuit Court of Appeals held "Although prosecutorial immunity bars 1983 claims based on prosecutors conduct in preparation for and during trial, it does not extend to conduct which was not performed in his role as an advocate and constitutes an administrative function." Coleman V. Turpin, 697 F.2d 1341, 1346 (10th Cir 1983).

¶20 The Tenth Circuit also held "prosecutorial immunity does not bar liability for submission of a false affidavit after a trial has concluded." Martinez V. Winner 771 F.2d 424.

¶21 Furthermore, the "District Attorney's Version" is the Defendant's personal testimony as a witness, which also is not protected by prosecutorial immunity.

¶22 The United States Supreme Court held "Nor does prosecutoial immunity protect a prosecutor who offers testimony as a witness, including in the form of an affidavit, as doing so constitutes performance of 'an act that any competent witness might have performed.'" Kalina V. Fletcher U.S. 129-130.

¶23 The Tenth Circuit held "Where a prosecutor personally vouches for the truth of facts set forth

in a certification, he is considered a witness and not entitled to immunity. Nielander V. Bd. Of County Comm's 582 F.3d at 1164.

¶24 The Plaintiff has asserted in this petition the Defendant committed Libel, which is clearly established under law. The Defendant in his official capacity would have known that his conduct violated the law, and therefore the Defendant is not entitled to qualified immunity.

¶25 The Tenth Circuit held "To determine whether a plaintiff can overcome the qualified immunity defense, 'first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right.'" Roska ex rel. Roska V. Peterson, 328 F.ed 1230, 1239 (10th Cir 2003) (Quoting Garramone V. Roma, 94 F.3d 1446, 1449 (10th Cir 1996).

¶26 The Defendant's false portrayal of the Plaintiff in his "District Attorney's Version", as a monster who ordered the brutal murder of an innocent pregnant young woman, subjected the Plaintiff to unwarranted public ridicule and scorn, which caused the Plaintiff to suffer sever emotional distress, and mental trauma.

¶27 **THEREFORE,** the Plaintiff moves the Court to **ORDER** the Defendant to write a full retraction of his false claims regarding the Plaintiff, and award the Plaintiff $5,000,000.00 in actual damages and $5,000,000.00 in punitive damages.

RESPECTFULLY SUBMITTED This __16__ day of __March__ 2021

James Patrick Lesley, Jr. D.O.C # 438533
Plaintiff Pro se
Davis Correctional Facility
6888 East 133rd Road
Holdenville, OK 74848-9295